IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MARY JETER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:06cv1043-MHT |
| | ) | (WO) |
| MONTGOMERY COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Mary Jeter brings this lawsuit against
defendant Montgomery County for denial of earned wages,
retaliation, and race discrimination.  Jeter brings
overtime and retaliation claims under the Fair Labor
Standards Act of 1938 (FLSA), as amended, 29 U.S.C.
§§ 201-219, a race-discrimination claim under the equal
protection clause of the Fourteenth Amendment as enforced
through 42 U.S.C. § 1983, and a state-law claim for breach
of contract.  Now pending before the court are the
county's motion to dismiss for failure to state a claim,
Jeter's motion for leave to amend her complaint, and the
county's motion to strike the exhibits Jeter filed in

support of her response to the county's motion to dismiss. For the reasons that follow, the motion to strike will be denied, the motion for leave to amend will be granted, and the motion to dismiss will be granted in part and denied in part.

## I. FACTS

The facts as alleged in Jeter's complaint are as follows. Beginning in June 2002, Jeter, an employee of the county youth facility, was assigned to the home-detention-verification program, which required her to place telephone calls during evening and weekend hours to verify the location of youths designated to home confinement. Because of Jeter's after-hours assignment, she worked more than 40 hours each week, but she did not receive overtime compensation. Jeter performed these overtime duties without overtime compensation for nearly four years and was never told that she was eligible for overtime pay. Jeter is black, and a white female employee

who was assigned the same duties in Jeter's absence was paid overtime.

On January 31, 2006, Jeter filed a written claim with her employer. Shortly after Jeter's claim was forwarded to a county attorney, the director of the youth facility canceled the home-detention program and increased Jeter's workload. Jeter's superiors told her she made a mistake by asking for overtime and otherwise shunned her.

## II. PROCEDURAL BACKGROUND

Jeter initially filed this action in state court, naming as defendants the Montgomery County Youth Facility and its director, Bruce Howell. The facility and its director removed the case to federal court and filed a motion to dismiss on grounds that the youth facility was not a suable entity and that Jeter had failed to a state a claim against  Howell upon which relief could be granted. Jeter subsequently amended her complaint to name Montgomery County as the sole defendant, and this court denied the motion to dismiss. At that point, the county

3

filed another motion to dismiss for failure to state a claim. Jeter filed a response that includes argument, supporting exhibits, and a second amended complaint with a motion for leave to file the same. The county opposes Jeter's motion for leave to amend her complaint a second time and additionally has moved to strike Jeter's exhibits. All three motions--to dismiss, to amend, and to strike--are now pending before the court.

### III. DISCUSSION

#### A. Introduction

The court must first decide in what order it should decide the motions. Deciding them in the order they were filed would not necessarily be efficient or just. More specifically, the court's rulings on the motions to strike and for leave to amend would affect the merits of the motion to dismiss. Accordingly, the court will first rule on the motion to strike. Next, because the county's basis for its opposition to Jeter amending the complaint is that such amendment would be futile in light of its motion to

4

dismiss, the court will consider the merits of the motion to dismiss against the facts and claims in the second amended complaint, and then decide both the motion to amend and motion to dismiss accordingly.

## B. Motion to Strike

Jeter's response in opposition to the county's motion to dismiss contains several exhibits, and the county has moved to strike the exhibits. Jeter contends that the exhibits prove the county had notice of her claim and knows it is liable for overtime pay. The county argues that the exhibits constitute settlement negotiations inadmissible under the Federal Rules of Evidence and that materials outside the pleadings are not permitted at the motion-to-dismiss stage under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## 1.

A motion to strike is governed by Rule 12(f) of the Federal Rules of Civil Procedure. Rule 12(f) provides

that "the court may order stricken from any <u>pleading</u> any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" (emphasis added). Rule 7(a) of the Federal Rules of Civil Procedure provides that a "pleading" is only a "complaint," "answer," "reply to a counterclaim," "answer to a cross-claim," "third-party complaint," "third-party answer," "reply to an answer," or "reply to a third-party answer."

The terms of Rules 12(f) and 7(a) make clear that "[o]nly material included in a 'pleading' may be subject of a motion to strike" and that "[m]otions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike." 2 James Wm. Moore et al., <u>Moore's Federal Practice</u> § 12.37[2] (3d ed. 2006). <u>See also Burns v. Lawther</u>, 53 F.3d 1237, 1241 (11th Cir. 1995) (per curiam) (only the items listed in Rule 7(a) constitute pleadings); <u>Lawhorn v. Atl. Refining Co.</u>, 299 F.2d 353, 357 (5th Cir. 1962)[1] (a motion to dismiss is not

---

1.  In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of
(continued...)

6

a pleading); 2 Moore, <u>supra</u>, § 7.02[1][b], at 7-7 ("A motion in any form cannot stand as a pleading.").

From Rules 12(f) and 7(a), it follows perforce that a response in opposition to a motion to dismiss is not a "pleading." Accordingly, the court will deny the county's motion to strike and will not strike the exhibits from Jeter's response. <u>See</u> <u>Lowery v. Hoffman</u>, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (Thompson, J.) ("as an initial matter, the motion to strike must be denied as to all non-pleadings").

2.

In its motion to strike, the county asks that in the alternative the court not consider the exhibits in ruling on its motion to dismiss. The court agrees not to consider the exhibits. <u>Cf</u>. <u>Norman v. Southern Guar. Ins. Co.</u>, 191 F.Supp.2d 1321, 1328 (M.D. Ala. 2002) (Thompson,

---

1.   (...continued)
Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

J.) (in resolving the pending summary-judgment motion, the court will implicitly consider the improperly filed motion to strike as, instead, notice of objections to the testimony described in the motion).

When a party moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and matters outside the pleading are presented in connection therewith, the court has two options.[2] First, the court may, at its discretion, exclude the outside material and not consider it in reaching the merits of the motion. Jones v. Auto. Ins. Co. of Hartford, 917 F.2d 1528, 1532 (11th Cir. 1990). Alternatively, the court may choose not to exclude the outside material, but then it must convert the motion into one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P.

_____

2. Matters outside the pleading include "any written or oral evidence in support or in opposition to the pleading that provides some substantiation for the pleadings." Concordia v. Bendekovic, 693 F.2d 1073, 1075 (11th Cir. 1982); see 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366, at 180-82 (3d ed. 2004).

12(b).  <u>See generally</u> 5C Charles Alan Wright & Arthur R.

Miller, <u>Federal Practice & Procedure</u> § 1366 (3d ed. 2004).

Here, Jeter has submitted matters outside the pleading in support of her opposition to the county's Rule 12(b)(6) motion to dismiss.  Rather than convert the motion into one for summary judgment, the court will exercise its discretion not to consider the exhibits and to rule on the merits of the Rule 12(b)(6) motion based on the pleading alone.

## C. Motion for Leave to Amend Complaint

### 1.

The next question is whether Jeter may amend her first amended complaint.  Rule 15(a) of the Federal Rules of Civil Procedure provides that, after a party has amended its pleading once as a matter of course, as was done here, subsequent amendments may occur only by leave of the court.  However, the rule also provides that leave to amend "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  A plaintiff should generally be

allowed to test his claim on the merits, but the liberal amendment policy prescribed by Rule 15 does not mean that leave will be granted in all cases. Indeed, in determining whether "justice so requires" that leave to amend be granted, district courts may consider such factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Andrx Pharms., Inc. v. Elan Corp., 421 F.3d 1227, 1236 (11th Cir. 2005); Nolin v. Douglas County, 903 F.2d 1546, 1550 (11th Cir. 1990), overruled on other grounds, McKinney v. Pate, 20 F.3d 1550 (11th Cir. 1994).

Here, the county does not argue that it would suffer any prejudice if leave to amend is granted, nor does it allege that Jeter has acted in bad faith. The county's only objection is that the amendment is futile because it would not defeat the county's pending motion to dismiss

10

for failure to state a claim upon which relief can be granted. Although allowing the amendment may cause some delay in the proceedings, this slight delay is outweighed by the interest in the resolution of Jeter's claims on their merits to the extent her second amended complaint is a sufficient one. Furthermore, as Jeter points out, the county has not yet filed its answer to the first amended complaint. Accordingly, unless Jeter's amendments would be futile, leave to amend will be granted.

In order to assess the county's futility argument, the court must hypothetically assess the merits of the county's motion to dismiss the first amended complaint against the claims and allegations set forth in the second amended complaint. The court now turns to that task.


## 2.

A court may dismiss a complaint for failure to state a claim only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Hishon

v. King & Spalding, 467 U.S. 69 (1984).  In evaluating a motion to dismiss, the court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party.  Id. at 7; Jackson v. Birmingham Bd. of Educ., 309 F.3d 1333, 1335 (11th Cir. 2002).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Sheuer v. Rhodes, 416 U.S. 232, 236 (1974).  The threshold for a complaint to survive a motion to dismiss for failure to state a claim is "exceedingly low."  Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). Additionally, a motion to dismiss may be granted as to only part of a complaint and denied as to the remainder. See, e.g., Chepstow Ltd. v. Hunt, 381 F.3d 1077 (11th Cir. 2004) (reversing district court's dismissal of some of plaintiff's claims, while affirming dismissal of other claims); Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 115 (2d Cir. 1982) ("a Rule 12(b)(6) motion to dismiss need not be granted nor denied in toto but may be granted

12

as to part of a complaint and denied as to the remainder"); see also 5C Wright & Miller, supra, § 1358.


3.

The court begins with count one of Jeter's claim, violation of the FLSA. It appears that the county's only argument against count one is that which covers the entire complaint: the county argues that Jeter's complaint must be dismissed because she fails to plead facts in discrete counts to support each claim and because each claim contains unsupported conclusions of law. According to the county, it "should not be required to guess what facts support each claim in order to frame a responsive pleading." Def. Mot. Dismiss at 5.

The county's argument is not a winning one. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires no more than "a short and plain statement of the claim showing that the pleader is entitled to relief." See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993); Conley v.

13

<u>Gibson</u>, 355 U.S. 41, 47 (1957).  Jeter's complaint--both before and after amendments--does just that.  Jeter sets forth just over a page of facts, and count one claims that the county violated the FLSA by not paying her overtime for work she did in excess over 40 hours per week.  There can be no doubt from the face of Jeter's complaint which alleged facts support her FLSA claim.

The cases the county cites are clearly distinguishable.  In <u>Magluta v. Samples,</u> 256 F.3d 1282 (11th Cir. 2001), the complaint was 58 pages long, contained 146 numbered paragraphs of factual allegations, named 14 defendants, and did not delineate which facts applied to which defendants and which counts, such that for each count "any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."  256 F.3d at 1284.  Here, by contrast, Jeter has complied with the requirement of Rule 8(e) that "[e]ach averment of a pleading be simple, concise, and direct."  And, in <u>Jackson v. BellSouth Telecommunications</u>, 372 F.3d 1250, 1271-72 (11th Cir. 2004), the plaintiffs

made "wholly conclusory allegations" of intentional race discrimination unsupported by specific facts.  Here, by contrast, the facts alleged by Jeter, if true, support a claim that the county violated the FLSA.  Accordingly, count one of the second amended complaint would survive the county's motion to dismiss.

### 4.

The court now turns to count two of Jeter's complaint, as amended, her state-law claim for breach of contract. Jeter alleges that her employer's failure to pay her overtime breached actual and implied contracts, and additionally alleges that the county breached its contractual obligation to negotiate in good faith after Jeter complained about her lack of overtime pay.  The county has two arguments for why this claim is due to be dismissed: first, because it is preempted by the FLSA; and, second, because Jeter failed to file a notice of claim as required by Alabama state law, 1975 Ala. Code §§ 6-5-20, 11-12-8.

15

The court need not decide the preemption issue because the county prevails on the notice-of-claim defense alone. Pursuant to §§ 6-5-20 and 11-12-8, presenting a claim to the county commission within 12 months of the accrual of the claim is a condition precedent to the commencement of a lawsuit against a county. <u>Callens v. Jefferson County Nursing Home</u>, 769 So.2d 273, 277 (Ala. 2000); <u>Williams v. McMillan</u>, 352 So.2d 1347 (Ala. 1977). The purposes of the statutes are to provide the county an opportunity to audit and investigate claims against it, <u>Helms v. Barbour County</u>, 914 So.2d 825, 829 (Ala. 2005), and to guard against excessive demands on the revenue in a particular year growing out of occurrences in the too distant past, <u>Rice v. Tuscaloosa County</u>, 4 So.2d 497, 499 (Ala. 1941). Jeter's complaint does not allege that she presented a claim prior to filing suit, and Jeter, in her response, admits that she did not.[3] Instead, Jeter asserts that the

---

3. To be sure, the county's notice-of-claim defense is not contained within the four corners of Jeter's complaint, even as amended. <u>Cf</u>. <u>Rice v. Tuscaloosa County</u>, 4 So.2d 497, 500 (Ala. 1941) (construing
(continued...)

16

county is estopped from raising the notice-of-claim defense because the county entered into settlement negotiations with her, thereby indicating that it had actual notice of the claim.

The law does not support Jeter's estoppel argument. Jeter cites only one case, City of Montgomery v. Weldon, 195 So.2d 110 (Ala. 1967), in support of her estoppel theory. In Weldon, although the court held that the city was estopped from asserting the notice-of-claim defense, "the sole issue [was] stated as follows: whether a municipality may actively mislead a citizen who was injured on its streets by its negligence, by representing to him that his claim is sufficiently filed and perfected, and by urging him not to hire an attorney or to take any further action for a year; and, after having led him into

_____

3.    (...continued)
predecessor statute to 1975 Ala. Code § 11-12-8 as requiring that timely presentation of claim be averred in complaint); Scarbrough v. Watson, 37 So. 281, 281 (Ala. 1904) (same for predecessor statute to § 6-5-20).  The court need not decide whether the defense can be considered in opposition to a motion to amend, because the parties have not opposed its consideration by the court here.

error, successfully set up his failure to strictly comply with the statutory requirements of a verified claim...." 195 So.2d at 112.    Here, in contrast, Jeter does not allege in her complaint, nor does she otherwise argue, that the county actively misled her by representing to her that her claim was perfected.    See <u>Large v. City of Birmingham</u>, 547 So.2d 457, 458-59 (Ala. 1989) (distinguishing <u>Weldon</u> on such grounds).    Accordingly, Jeter's state-law claim is barred by her failure to comply with the notice-of-claim statute.

### 5.

Count three is a retaliation claim under the FLSA.    In Jeter's response to the county's motion to dismiss, she states that her second amended complaint "deletes the demand for ... retaliation," but in fact the retaliation claim reappears in the second amended complaint.    The court will not treat the retaliation claim as abandoned and will evaluate its merits against the county's motion to dismiss.

Jeter alleges that after she complained about her lack of overtime pay, the home detention verification program was canceled, her workload increased, she was told by superiors that she was not a team player and had made a mistake by asking for overtime, and she was otherwise harassed, shunned, and spied upon. The county argues that Jeter fails to state a claim for retaliation under the FLSA because none of the allegedly retaliatory actions taken by Jeter's employer qualified as 'adverse employment actions' within the meaning of the FLSA. The county also argues that Jeter's allegations are insufficient to establish a causal relationship between her complaint and those actions.

The county's arguments are unavailing. It is true that an employer's retaliatory action must be "adverse" in order to be prohibited by the FLSA. <u>Wolf v. Coca-Cola Co.</u>, 200 F.3d 1337, 1342-43 (11th Cir. 2000). However, the county is incorrect to insist that the conduct alleged by Jeter could never qualify as adverse within the meaning of the statute. In <u>Burlington Northern & Santa Fe Railway</u>

Co. v. White, ___ U.S. ____, 126 S.Ct. 2405 (2006), the Supreme Court clarified the standard for the "level of seriousness" to which an employer's retaliatory act must rise before it becomes actionable retaliation: "the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means that it well might have dissuaded a reasonable worker" from engaging in the protected activity. ___ U.S. at ____, 126 S.Ct. at 2415.  The Court acknowledged that "it is important to separate significant from trivial harms" because Congress's intent was to "prohibit[] employer actions that are likely to deter" employees from engaging in protected activity under the statute.  Id. Because "the significance of any given act of retaliation will often depend on the particular circumstances" of a case, id., the "legal standard speaks in general terms rather than specific prohibited acts," id. at 2416.

Admittedly, White is a retaliation case brought under Title VII of the Civil Rights Act of 1965, as amended, 42 U.S.C. §§ 1981a, 2000e through 2000e-17, whereas Jeter's

claim is for FLSA retaliation.  However, the retaliation provision of the FLSA uses language nearly identical to that of Title VII.  <u>Compare</u> Title VII, 42 U.S.C. § 2000e-3(a) ("It shall be unlawful employment practice for an employer to <u>discriminate</u> against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." (emphasis added)) <u>with</u> FLSA, 29 U.S.C. § 215(a)(3) ("[I]t shall be unlawful for any person ... to discharge or in any other manner <u>discriminate</u> against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." (emphasis added)).  Recognizing the similarities between the statutes, the First Circuit Court of Appeals "regard[s] Title VII, [the Age Discrimination in Employment Act of

1967 (ADEA), 29 U.S.C. §§ 621-634], [the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461], and FLSA as standing in pari passu and endorse[s] the practice of treating judicial precedents interpreting one such statute as instructive in decisions involving another." Serapión v. Martínez, 119 F.3d 982, 985 (1st Cir. 1997). Furthermore, the Tenth Circuit Court of Appeals has held that White is applicable to the anti-retaliation provisions of other federal statutes. Metzler v. Fed. Home Bank of Topeka, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006) (White applies to retaliation claims under the ADEA, the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. §§ 2601-2654, and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12112-12117, 12203). Based on the comparable language in the statutes, the similar purposes of anti-retaliation provisions, and the case law from other circuits, the court concludes that White is applicable to a claim for retaliation under the FLSA.

Here, the court cannot rule out the possibility that the retaliatory acts of which Jeter complains are not materially adverse as that standard is explained by the <u>White</u> court.  It is certainly not clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69 (1984).  The court would have to see what "all the circumstances" of this case are before it could dismiss the retaliation claim.

The court also rejects the county's causation argument.  The county argues that mere temporal proximity of three months between Jeter's complaint and the youth facility's termination of the home detention verification program is not enough to demonstrate a causal link and therefore not enough to establish a claim of retaliation. While that may be the appropriate analysis at the summary-judgment stage, the court cannot say, at the Rule 12(b)(6) stage, that no set of facts can be proven consistent with a causal link necessary to sustain Jeter's retaliation

claim.  Furthermore, even if Jeter is ultimately unable to establish a causal link as to the termination of the program, she faces much less of an uphill battle with respect to the causation element for the other alleged retaliatory acts.  In sum, count three of the second amended complaint would survive the county's motion to dismiss.

### 6.

The fourth and final count is one for race discrimination in violation of the equal protection clause of the Fourteenth Amendment.  Plaintiffs generally enforce the equal protection clause through 42 U.S.C. § 1983, so the court will analyze whether Jeter can sustain a cause of action under that statute.  The county argues that Jeter's § 1983 claim is preempted by the FLSA because she seeks to enforce FLSA rights.  Jeter responds that her Fourteenth Amendment claim seeks to enforce an independent right to be free from race-based discrimination in pay.

The court holds that a § 1983 claim asserting race discrimination in pay may be pursued along side an FLSA claim and thus that Jeter's § 1983 claim is not preempted or precluded by the FLSA.  In <u>Jarrett v. Alexander</u>, 235 F.Supp.2d 1208, 1210-11 (M.D. Ala. 2002) (Albritton, C.J.), the district court explained that government employees could pursue a § 1983 claim independent of their FLSA claims if they "are not attempting [to] argue that the violation of the FLSA is also a violation of the Equal Protection Clause, but are instead asserting a constitutional claim based on wage differences between the Plaintiff employees and other state employees."  235 F.Supp.2d at 1211.  "Under such a theory," the court continued, "it is conceivable that if similarly situated persons are treated differently, an Equal Protection claim may be established even if the Plaintiffs would not be entitled to overtime under the FLSA." <u>Id</u>. <u>Cf</u>. <u>Thigpen v. Bibb County</u>, 223 F.3d 1231, 1237 (11th Cir. 2000) (recognizing a § 1983 cause of action for employment discrimination distinct from Title VII), <u>abrogated on</u>

25

other grounds by <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536
U.S. 101 (2002).

The court agrees with the analysis in <u>Jarrett</u> and
finds that it applies to this case.  Here, Jeter is not
only claiming that she was denied overtime pay to which
she is entitled under the FLSA, she is also claiming that
she was treated differently, based on her race, from a
similarly situated white employee.  Based on the facts
alleged in the complaint, even if Jeter does not prevail
on her FLSA claim for denial of overtime pay, it is
conceivable that she could still have an equal-protection
claim for race-based pay inequality.  Accordingly, count
four of the second amended complaint would survive the
county's motion to dismiss.


**7.**

In sum, counts one, three, and four of Jeter's second
amended complaint would survive the county's motion to
dismiss for failure to state a claim upon which relief can
be granted.  Therefore, amendment of the first amended

complaint would not be entirely futile.  The county having offered no other argument against Jeter's motion for leave to amend her first amended complaint, the court will grant that motion.

### C. Motion to Dismiss

Still pending is the county's motion to dismiss the first amended complaint for failure to state a claim upon which relief can be granted.  Because the county's argument against Jeter's motion for leave to amend that complaint was that amendment would be futile against its motion to dismiss, and because that argument was unsuccessful in full, the court will treat the county's motion to dismiss the first amended complaint as a motion to dismiss the second amended complaint.  For reasons already stated in this opinion, that motion will be granted in part and denied in part: count two (the breach-of-contract claim) will be dismissed, whereas counts one, three, and four will not.

\* \* \*

For the foregoing reasons, it is ORDERED as follows:

(1) Defendant Montgomery County's motion to strike (doc. no. 23) is denied.  The court, however, will not consider the exhibits attached to plaintiff Mary Jeter's response (doc. no. 19) to defendant Montgomery County's motion to dismiss the first amended complaint (doc. no. 16).

(2) Plaintiff Jeter's motion for leave to amend her first amended complaint (doc. no. 20) is granted.

(3) Defendant Montgomery County's motion to dismiss the first amended complaint (doc. no. 16) is treated as a motion to dismiss the second amended complaint, and said motion is granted as to count two (the breach-of-contract claim) and denied as to counts one, three, and four.

DONE, this the 19th day of March, 2007.

　　　/s/ Myron H. Thompson　　　
UNITED STATES DISTRICT JUDGE

A copy of this checklist is available at the website for the USCA, 11th Circuit at www.ca11.uscourts.gov
Effective on April 9, 2006, the new fee to file an appeal will increase from $255.00 to $455.00.

## CIVIL APPEALS JURISDICTION CHECKLIST

1.  **Appealable Orders:** Courts of Appeals have jurisdiction conferred and strictly limited by statute:

    (a)  **Appeals from final orders pursuant to 28 U.S.C. § 1291:** Only final orders and judgments of district courts, or final orders of bankruptcy courts which have been appealed to and fully resolved by a district court under 28 U.S.C.§ 158, generally are appealable. A final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Pitney Bowes, Inc. v. Mestre, 701 F.2d 1 365, 1 368 ( 11th Ci r. 1 983). A magistrate judge's report and recommendation is not final and appealable until judgment thereon is entered by a district court judge. 28 U.S.C. § 636(c).

    (b)  **In cases involving multiple parties or multiple claims,** a judgment as to fewer than all parties or all claims is not a final, appealable decision unless the district court has certified the judgment for immediate review under Fed.R.Civ.P. 54(b). Williams v. Bishop, 732 F.2d 885, 885- 86 (11th Cir. 1984). A judg ment which resolves all issues except matters, such as attorneys' fees and costs, that are collateral to the merits, is immediately appealable. Budinich v. Becton Dickinson & Co., 486 U.S.196, 201, 108 S.Ct. 1717, 1721-22, 100 L .Ed.2d 178 (1988); LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 837 (11th Cir. 1998).

    (c)  **Appeals pursuant to 28 U.S.C. § 1292(a):** Appeals are permitted from orders "granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions . . ." and from "[i]nterlocutory decrees . . . determining the rights and liabilities of parties to admiralty cases in which appeals from final decrees are allowed." Interlocutory appeals from orders denying temporary restraining orders are not permitted.

    (d)  **Appeals pursuant to 28 U.S.C. § 1292(b) and Fed.R.App.P. 5**: The certification specified in 28 U.S.C. § 1292(b) must be obtained before a petition for permission to appeal is filed in the Court of Appeals. The district court's denial of a motion for certification is not itself appealable.

    (e)  **Appeals pursuant to judicially created exceptions to the finality rule:** Limited exceptions are discussed in cases including, but not limited to: Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546, 69S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc., 890 F.2d 371, 376 (11th Cir. 1989); Gillespie v. United States Steel Corp., 379 U.S. 148, 157, 85 S.Ct. 308, 312, 13 L.Ed.2d 199 (1964).

Rev.: 4/04

2.    <u>**Time for Filing**</u>: The timely filing of a notice of appeal is mandatory and jurisdictional. <u>Rinaldo v. Corbett</u>, 256 F.3d 1276, 1278 (11th Cir. 2001). In civil cases, Fed.R.App.P. 4(a) and (c) set the following time limits:

     (a)   **Fed.R.App.P. 4(a)(1):** A notice of appeal in compliance with the requirements set forth in Fed.R.App.P. 3 must be filed in the district court within 30 days after the entry of the order or judgment appealed from. However, if the United States or an officer or agency thereof is a party, the notice of appeal must be filed in the district court within 60 days after such entry. **THE NOTICE MUST BE RECEIVED AND FILED IN THE DISTRICT COURT NO LATER THAN THE LAST DAY OF THE APPEAL PERIOD – no additional days are provided for mailing.** Special filing provisions for inmates are discussed below.

     (b)   **Fed.R.App.P. 4(a)(3):** "If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later."

     (c)   **Fed.R.App.P. 4(a)(4):** If any party makes a timely motion in the district court under the Federal Rules of Civil Procedure of a type specified in this rule, the time for appeal for all parties runs from the date of entry of the order disposing of the last such timely filed motion.

     (d)   **Fed.R.App.P. 4(a)(5) and 4(a)(6):** Under certain limited circumstances, the district court may extend the time to file a notice of appeal. Under Rule 4(a)(5), the time may be extended if a motion for an extension is filed within 30 days after expiration of the time otherwise provided to file a notice of appeal, upon a showing of excusable neglect or good cause. Under Rule 4(a)(6), the time may be extended if the district court finds upon motion that a party did not timely receive notice of the entry of the judgment or order, and that no party would be prejudiced by an extension.

     (e)   **Fed.R.App.P. 4(c):** If an inmate confined to an institution files a notice of appeal in either a civil case or a criminal case, the notice of appeal is timely if it is deposited in the institution's internal mail system on or before the last day for filing. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

3.    <u>**Format of the notice of appeal:**</u> Form 1, Appendix of Forms to the Federal Rules of Appellate Procedure, is a suitable format. <u>See</u> also Fed.R.App.P. 3(c). A <u>pro se</u> notice of appeal must be signed by the appellant.

4.    <u>**Effect of a notice of appeal:**</u> A district court loses jurisdiction (authority) to act after the filing of a timely notice of appeal, except for actions in aid of appellate jurisdiction or to rule on a timely motion of the type specified in Fed.R.App.P. 4(a)(4).