IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY JETER, | } | |
| | } | |
| Plaintiff, | } | |
| | } | |
| v. | } | CASE NO. 2:06cv1043-MHT |
| | } | |
| MONTGOMERY COUNTY YOUTH | } | |
| FACILITY and BRUCE HOWELL, | } | |
| | } | |
| Defendants. | } | |

## MOTION TO SUBSTITUTE AFFIDAVIT

COMES NOW Defendant Montgomery County, and moves this Honorable Court to substitute the attached Affidavit of Dr. James A. Buford for the Affidavit of Dr. James A. Buford that was filed with this Court on November 21, 2007.  Defendant shows as follows:

1.	Defendant filed the Affidavit of Dr. James A. Buford with this Court on November 21, 2007.  This affidavit is included as no. 14 to the Defendant's Evidentiary Materials Submitted in Support of Defendant's Motion for Summary Judgment.  (Doc. #52)

2.	The vitae of Dr. Buford was supposed to have been attached to the Affidavit.

3.	Attached hereto is the same Affidavit of Dr. James A. Buford that was previously filed with this Court on November 21, 2007, along with the vitae attached thereto.

WHEREFORE THE PREMISES CONSIDERED, Defendant respectfully requests that this Court substitute the attached affidavit of Dr. Buford for the Affidavit of

Dr. Buford filed on November 21, 2007. Defendant further requests any other relief to which it may be entitled.

                                                              ___/s/Constance C. Walker
                                                              Thomas T. Gallion (ASB-5295L74T)
                                                              Constance C. Walker (ASB-5510-L66C)
                                                               Tyrone C. Means (ASB-760-S80T)
                                                               Counsel for Defendant Montgomery County

**OF COUNSEL**

**HASKELL SLAUGHTER YOUNG & GALLION**
305 South Lawrence Street
Montgomery Alabama 36104
Telephone: (334) 265-8573
Facsimile:  (334) 264-7945


**OF COUNSEL:**

**THOMAS MEANS GILLIS & SEAY, PC**
Post Office Drawer 5058
Montgomery, Alabama  36103-5058
(334) 270-1033
(334) 260-9396 Fax

## **CERTIFICATE OF SERVICE**

      I hereby certify that I have served a copy of the foregoing on those listed below by placing a copy of same in the United States mail, postage prepaid and properly addressed on this the 26th day of November, 2007.


Ms. Mary W. Jeter
6016 Bolingbrook Drive
Montgomery, Alabama 36117

                                                     ___/s/Constance C. Walker
                                                         OF COUNSEL

29360

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MARY JETER, } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | CASE NO. 2:06cv1043-MHT |
| } | |
| MONTGOMERY COUNTY YOUTH } | |
| FACILITY and BRUCE HOWELL, } | |
| } | |
| Defendants. } | |

**AFFIDAVIT OF JAMES A. BUFORD, JR.**

I, James A. Buford, Jr., first duly sworn, deposes and says on oath as follows:

1. My name is James A. Buford, Jr., and I am over the age of nineteen years and competent to give the following affidavit.

2. I am Division Director at Ellis-Harper Management, 337 East Magnolia Avenue, Auburn, Alabama 36830. A copy of my vitae is also attached.

3. This report addresses the claim brought against the Montgomery County Commission by Ms. Mary Jeter, in which she seeks to recover overtime pay for making after-hours calls to youths in home detention from June, 2002 until the end of 2005. Ms. Jeter is employed in the title Youth Counselor II at the Montgomery County Youth Facility. Her immediate superior is Mr. Steve Wooten, Probation Supervisor, who reports to Mr. Bruce Howell, Juvenile Detention Director.

4. In preparing this document I relied on the following sources of information: Interviews with Howell, Wooten and Ms. Betty Ingram; Ms. Jeter's Amended Complaint, Ms. Jeter's deposition transcript including exhibits; and overtime

1

certifications submitted by Ms. Jeter and Ms. Phoenix Martin. I also relied on personal knowledge of County (including the Youth Facility) and Personnel Department policies and procedures, gained from working with these entities as consultant on classification, pay structures, and pay administration including wage and hour issues since 1996.

5. Youth Counselor II is a non-exempt classification subject to the overtime provisions of 29 U.S.C. s 207(a) of the Fair Labor Standards Act which prohibits employers from requiring an employee to work more than 40 hours in a workweek unless the employee is compensated for his or her overtime hours at one-and-one half the regular rate of pay (local governments may offer compensatory time at time-and-one half in lieu of overtime pay to a maximum of 240 hours).

6. Non-exempt employees at the Montgomery Youth Facility are not normally allowed to work over 40 hours in a work week and are required to sign in and sign out to maintain control over hours worked. In most cases employees work a standard 8 hour day, 5 days per week schedule; however, in some situations employees are permitted to work more or less hours in a day as to a maximum of 40 hours in a work week, a practice known as "flex-time." Requests for overtime must be approved in advance and the employee is required to sign a certification form documenting his or her overtime hours at the end of each two-week pay period. Employees who work more than 40 hours in a work week have the option of requesting compensatory time at time-and-one-half or overtime pay at one-and-one-half times his or her regular rate of pay. This form is also used by employees to request compensatory time at straight time or pay at straight time for work over 8 hours in a day when actual work during the work week was less than 40 hours.

7. Prior to 2002 Ms. Jeter's official work hours were 8:00 AM to 12:00 Noon and 1:00 PM to 5:00 PM, Monday through Friday, which is a standard 40-hour work week. However, during 2002, she was assigned to a program known as Teen Court (later changed to Youth Court) which required her to be present at the Youth Facility on certain evenings for Court Sessions. These sessions began at 6:00PM and typically lasted 2-3 hours and occasionally slightly longer. Ms. Jeter was allowed to offset these hours (or other hours that exceeded 8 in a work day) by taking time off from work for an equivalent number of hours during the same work week; i.e., "flex-time," or, if the number of hours worked exceed 40, to request appropriate overtime compensation.

8. In June, 2002 Howell and Wooten assigned Ms. Jeter the additional task of making calls at random times to juveniles who had been placed in home detention. Ms. Jeter was to make calls on Monday through Thursday and Ms. Phoenix Martin, another employee, made calls on Friday through Sunday. When either employee was absent from work during her assigned calling schedule, the other employee would make her calls. In Ms. Jeter's case such calls were to be made outside of her official work hours, and except for calls made while she was present at Teen Court, they were made from home or other locations away from her employee's premises. This arrangement complies with 29 C.F.R. s 785.23, which addresses working at home. The regulation states that ". . . any reasonable agreement of the parties that takes into account the pertinent facts will be accepted." The procedure for accounting for her time, and when necessary, requesting appropriate overtime compensation was the same as described above.

9. Both Howell and Wooten have stated that Ms. Jeter understood these procedures and that she was to be properly compensated for any overtime work. This

3

was also confirmed by Ms. Betty Ingram who was employed as Administrative Assistant and had the responsibility for processing the payroll during the time period covered by the claim. According to Ms. Ingram, Howell routinely signed off on all overtime certifications, including those submitted by Ms. Jeter.

10. However, Ms. Jeter contends that this was not the case. In her deposition she states numerous times that her immediate supervisor, Steve Wooten told her not to request overtime because Bruce Howell would not approve it. She later qualified this contention saying that overtime could be paid for calls made in certain situations; i.e., calls made for Ms. Martin on Friday through Sunday, calls from the premises when she was involved with Teen (Youth) Court, and calls made while on leave and on holidays. Ms. Jeter stated that she understood flex-time to mean that she could come in late following a day in which she worked more than 8 hours, she still had to work a full schedule of hours; in other words, not offset overtime hours. Ms. Jeter stated that other employees received 2 hours overtime pay for being on call whether they did any work or not. Ms. Jeter acknowledges receiving policy documents and employee handbooks that outline the procedures for approval and payment of overtime but states on P. 174 that while this was the "policy," the "actual principle" was different; in other words, the benefits of the policy were denied to her.

11. Ms. Jeter indicates that her decision to pursue these claims was related to a County Commission meeting in October, 2005. During that meeting there was an issue involving a new classification and pay plan that had been adopted several years earlier. Employees whose range maximums were lowered were allowed to remain in the old plan and receive step increases until the new plan "caught up" through periodic adjustments;

4

however the phase-in procedure did not provide for cost-of-living increases to the old plan. This was a point of contention for employees such as Ms. Jeter who had reached the range maximum for their grade (i.e., became "topped out) in the old plan. She stated on P. 66 that after the meeting in which a statement was made that "...we (similarly situated employees) were compensated for everything we did," she began to submit overtime claims for home detention work

12.  To be "properly compensated" for overtime work Ms. Jeter could have elected compensatory time at straight time, compensatory time at 1.5, overtime pay at straight time, or overtime pay at 1.5. From July 22, 2002 through January 16, 2006 Ms. Jeter submitted 60 overtime certifications, covering 69 work weeks for hours worked over 8 in a day and/or hours worked over 40 during a work week covered 69 work weeks. The purpose and hours claimed in these requests is shown in the table below:

| Type of Request | Number | Hours |
|---|---|---|
| Compensatory time @ straight time | 24 | 112.00 |
| Compensatory time @ 1.5 | 34 | 170.00 |
| Overtime pay @ straight time | 6 | 38.50 |
| Overtime pay @ 1.5 | 12 | 78.25 |

A review of these certifications reveals that when Ms. Jeter worked less than 40 hours in a work week she elected compensatory time at straight time or overtime pay at straight time. When she worked more than 40 hours in a work week she elected compensatory time at 1.5 or overtime pay at 1.5.

13.  There were 14 of these certifications that referred to home detention calls. Based on documentation submitted by Ms. Jeter in support of these certifications the requests are as shown below:

| Type of Request | Mon.-Thurs. | Fri.-Sun | Holiday |
|---|---|---|---|
| Compensatory time @ straight time | 2,2 | 2,2,2,2,2,2,2 | 2,2,2,2,8,2 |
| Compensatory time @ 1.5 | 1,1,1,4,2,2 | 2,2,2,2, | |
| Overtime pay @ straight time | | 2,4,2,2 | |

5

| Overtime pay @ 1.5 | 4 | 2,2,2,2,2,2,2,2,2 | |

The data indicate that Ms. Jeter tended to follow a similar pattern in requesting compensation for overtime work making home detention calls as for overtime work generally, except that she contends that most calls made on Monday through Thursday were made on the premises of the Youth Facility, which cannot be verified. The only certification that referred to home detention calls submitted after October, 2005 requested 8 hours of compensatory time at straight time for calls made on weekends and holidays.

14. The essential elements of Ms. Jeter's overtime claim is that she was not permitted to request overtime compensation for home detention calls unless they were made during Friday through Sunday or on holidays or were made while she was on the premises of the Youth Facility; that she could not offset these hours with flex-time; and that other employees were treated more favorably in regard to overtime work. In support of that claim she has submitted a reconstructed list of calls made during the approximately 4 year period described above.

15. The validity of Ms. Jeter's claim assumes the following scenario: Howell and Wooten established and enforced overtime rules covering home detention calls for Ms. Jeter that violated clearly stated County policy; they interpreted flex-time differently than the commonly accepted definition such that Ms. Jeter could not use this practice to offset time spent on her after-hours calls; and they provided preferential overtime arrangements to other employees. However, there are a number of points that cast doubt on Ms. Jeter's version of what took place:

1. All Ms. Jeter's overtime claims for home detention calls were paid, including requests made on Monday through Thursday.

6

2. There is no indication that either Howell or Wooten raised a question regarding whether or not Ms. Jeter was on the premises of the Youth Facility when these calls were made, or, for that matter, why it would have made any difference.

3. Ms. Jeter's certifications indicate that when she worked on the premises after normal hours, she requested and received appropriate overtime compensation. This does not comport with her stated understanding of flex-time.

4. Ms. Jeter's contention that other employees were treated differently is not accurate. She received overtime compensation for making calls on non-duty days on the same basis as Ms. Martin. In regard to on-call pay, this is another arrangement provided for in F.L.S.A. that applies to employees assigned to Intake and not to Ms Jeter (or Ms. Martin).

5. Ms. Jeter acknowledges her claim is related to the decision by the County Commission on cost-of-living increases to employees in the old pay plan in October, 2005, which suggests that her displeasure with County pay practices is related to her rate of pay rather than the handling of overtime pay.

16. Although Ms. Jeter's version is contradicted by these facts and circumstances, it is necessary to address her reconstructed list of calls. Ms. Jeter stated that she did not keep a record of home detention calls made during the period, and acknowledges problems in recreating the data (names matched with dates and times). Thus it is not possible from her list of calls to determine with reliability which category to assign calls for overtime purposes; i.e., calls made when her supervisors assumed she was offsetting the hours with flex-time, calls made during weeks when the hours worked were less than 40 and calls made when hours worked were greater than 40. Moreover, except for certifications that were submitted as described previously, she failed to report calls contemporaneously with the action as required in official procedures. Where an employer has no knowledge that overtime work was being performed and the employee deliberately withholds such information, the employer's failure to pay overtime hours is

not a violation of the F.L.S.A. See, for example, *Wood v. The Mid-America Management Corp., 192 Fed. Appx. 378 (6th Cir. 2006).*

17. Through my work with the County (including the Youth Facility) and the Personnel Department, I have personal knowledge that officials and managers at all levels understand and are required to comply with County overtime policy and that the County pays all properly submitted overtime claims, including all claims that were submitted by Ms. Jeter. There was no rational basis for Howell or Wooten to have singled out Ms. Jeter for adverse treatment in this regard. Rather both the accounts given by them and supported by Ms. Ingram, and the paper trail suggest that Ms. Jeter was treated fairly and in accordance with County policy in regard to overtime pay.

*[signature]*
James A. Buford, Jr.
Division Director
Ellis-Harper Management
337 East Magnolia Avenue
Auburn, AL 36830
(334) 821-0125
October 9, 2007

STATE OF ALABAMA          *
                          *
LEE        COUNTY         *

I, Wilson Ebbins, a Notary Public in and for said County, in said State, hereby certify that James A. Buford, Jr., whose name is signed to the foregoing report, and who is known to me, acknowledged before me on this day that, having read the contents of this document, he executed the same on the day the same bears date.

Given under my hand and official seal this 14th day of November, 2007.

_____
Notary Public
My commission expires 2/14/08

8

VITAE

James A. Buford, Jr., PhD, PHR, IPMA-CP

EXPERIENCE

**1995-Present.** Division Director, Ellis-Harper Management. Responsible for providing management consulting services to clients including local governments, utilities, business firms, U.S. Military and non-profits. Services include policy development, designing selection, performance appraisal and compensation systems; advising and assisting with EEO and wage and hour issues including analysis, response to charge, case preparation and court testimony; and training programs in human resource topics including HR functions, performance counseling, supervisory management and sexual harassment. Have also continued research on workplace sexual climate with the objective of publication of results and licensing of instrument. Served as Adjunct Professor in Department of Management in the College of Business at Auburn University. Serve as major professor and/or member of advisory committees for graduate students in human resource management. Teach in graduate management program at Troy University and graduate public administration program at Auburn University. Served on doctoral committee at the University of Alabama in Birmingham. Serve as expert witness on selection, performance appraisal, sexual harassment and pay issues in federal courts in Alabama and Georgia.

**1983-1995.** Management Scientist and Coordinator of Management Development, Cooperative Extension Service, Auburn University with professorship in Department of Management in the College of Business. Developed extension programs in human resources management in both public and private sectors. Activities included technical assistance contracts with firms and organizations, holding workshops and seminars, developing instrument to measure sexual harassment in the workplace writing professional publications and serving as internal consultant to University administration on EEO issues. Major accomplishments during this period were the development of a 120 hour accreditation program for human resources administrators in local government, generation of approximately $500,000 in extramural funding through contracts, seminars and sales of publications. Also successfully managed a number of Title VII, ADEA, and EPA cases brought against the University including serving as expert witness. Received Alumni Association Award of Excellence.

**1971-1983.** Head, Management Operations, Cooperative Extension Service, Auburn University. Responsible for human resources management and management information systems for extension system consisting of Alabama A&M University and Tuskegee University. Major accomplishments during this period included the development of a comprehensive human resources program for the system. Designed and implemented selection tests and performance appraisal system which met requirements of the "Uniform Guidelines." Developed statistical model to audit compensation and remove disparities based on race or sex. Served as consultant to Extension Service-USDA on EEO issues.

1

**1965-1971.** Extension Specialist, Cooperative Extension Service. Developed extension programs in for firms in the wood products industry. Focus of program was technology transfer, management decision making and marketing. Major accomplishments during this period included early adoption of technology, more efficient operation of processes and informed decision on the part of clientele. Program was recognized by industry association and served as national model.

## EDUCATION

PhD University of Georgia, 1974 (major in resource management with concentrations in economics, agricultural economics and human resources management).

MS Auburn University, 1965 (major in economics and minor in statistics). Elected to Gamma sigma Delta and Phi Kappa Phi.

BSF Auburn University, 1960 (major in industrial management and minor in economics). Participant in honors program and elected to Xi Sigma Pi.

Certified by the Human Resource Certification Institute (PHR) in 1979. Earned lifetime certification in 1999. Certified by the Public Human Resource Certification Council (IPMA-CP) in 2001.

## PUBLICATIONS

**Books and Related**

James A. Buford, Jr. and Suzette M. Jelinek, "Traditional Pay in Public Organizations: Should we try something else or try doing it right?" in *Human Resource Management: Contemporary Issues, Challenges and Opportunities* (Information Age Publishing: 2007), pp. 441-454.

James A. Buford, Jr., "Identifying and Preventing Sexual Harassment in the Workplace," Seminar series for employees, executives and supervisors, 2007.

James A. Buford, Jr. "Legal Issues in Compensation—Complying with the Fair Labor Standards Act, Equal Pay Act, Age Discrimination in Employment Act and Title VII," Seminar series for human resource administrators, 2007.

James A. Buford, Jr., "Compensation and Benefits," in *Encyclopedia of Public Administration and Public Policy* (New York: Marcel Dekker, 2007).

James A. Buford, Jr., and James R. Lindner, *Human Resource Management in Local Government* (Cincinnati: South-Western, 2002), 485 pp.

James A. Buford, Jr., "Sexual Harassment Evaluation Inventory," © 1996, James A. Buford, Jr.

James A. Buford, Jr., Arthur G. Bedeian and James R. Lindner, *Management in Extension*, 3rd Edition, (Columbus, OH: Ohio State University Extension, 1995), 357 pp. First and second editions were published by Auburn University in 1979 and 1987.

Bettye B. Burkhalter and James A. Buford, Jr., Editors and contributors, *Performance Appraisal* (Washington, DC: The American Association of Community and Junior Colleges, 1989), 187 pp.

James A. Buford, Jr., and Arthur G. Bedeian, Part 4. "Staffing and Human Resource Management" in Arthur G. Bedeian, *Management* (Chicago: Dryden, 1993).

**Journal Articles**

James A. Buford, Jr., "Affirmative Action Works," *Commonweal* CXXV (June 19,1998), pp.12-15.

James A. Buford, Jr., "Be Your Own Boss," *Journal of Extension* 31 (Spring, 1993). Available on-line: www.joe.org/joe/1993 spring/fl.html.

James A. Buford, Jr., "Extension Management in the Information Age," *Journal of Extension* 28 (Spring, 1990). Available on-line: www.joe.org/joe/1990 spring/fut2.html.

James A. Buford, Jr., Bettye B. Burkhalter, and Grover T. Jacobs, "Link Job Descriptions to Performance Appraisals," *Personnel Journal* 67 (June, 1988), pp. 135-137.

Bettye B. Burkhalter, James N. Wilmoth, Nathan L. Essex, and James A. Buford, Jr., "Anomalies in Auditing the Compensation Function: Getting Two Sets of Answers form One Set of Data," ERIC (Dept. of Education, ED 261 063, January 8, 1986), 29pp.

Bettye B. Burkhalter, James N. Wilmoth, Nathan L. Essex, and James A. Buford, Jr., "Auditing the Compensation for Race and Sex-Based Salary Differences: Further Needed Refinements," *Compensation Review* 18 (1st Quarter, 1986), pp. 35-42.

James A. Buford, Jr., Bettye B. Burkhalter and James N. Wilmoth, "Auditing the Compensation Function for Sex-Based Salary Differences: Some needed Refinements," *Compensation Review* 15 (3rd Quarter, 1983), pp. 33-41.

Dwight R. Norris and James A. Buford, Jr., "A Content Valid Writing Test: A Case Study," *Personnel Administrator* 25 (January, 1980), pp. 40-43.

James A. Buford, Jr., and Dwight R. Norris, "A Salary Equalization Model: Identifying and Correcting Sex Based Salary Differences," *Employee Relations Law Journal* 6 (Winter, 1980-81), pp.406-421.

James A. Buford, Jr., Robert L Little, and Frederick J. Holemo, "Access to Resources: A Barrier to New Competition in the Southern Pine Lumber Industry, *Forest Products Journal* 25 (March, 1975), pp. 41-44.

**Extension Publications**

Renee D. Culverhouse and James A. Buford, Jr., Sexual Harassment: Information for Employers and Managers (Auburn University Cooperative Extension Service CRD-51, July, 1990).

James A. Buford, Jr., Local Government Series on Human Resources Management-- *Analyzing Jobs and Writing Job Descriptions, Recruiting and Selection, Performance Appraisal* (with Sonya T. Collins) and *Compensation* (Auburn University Cooperative Extension Service, 1987-1989).

**Invited Papers**

(List may be furnished on request)

Mailing Address: 337 East Magnolia Avenue, Auburn, AL 36830
Phone (334) 821-0125 or (800) 636-8182
Fax: (334) 826-7700
E-mail: james.buford@mindspring.com