IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **MARY JETER,** | ] |
| **Plaintiff,** | ] |
| vs. | ] Case Number: 2:06cv1043-MHT |
| **MONTGOMERY COUNTY,** | ] |
| **Defendant.** | ] |

### REPLY BRIEF OF DEFENDANT MONTGOMERY COUNTY

COMES NOW Defendant Montgomery County and submits the following Reply Brief in support of its Motion for Summary Judgment.

### I. INTRODUCTION

On November 21, 2007, Defendant Montgomery County filed a Motion for Summary Judgment. (Doc. # 49) This Court entered an order on November 26, 2007, directing Plaintiff Jeter to file a response to the motion on or before December 26, 2007. (Doc. # 53)

Jeter failed to file a response by the deadline imposed by this Court, and on January 4, 2008 this Court entered an order stating that it would not consider any response in opposition to the motion unless it was filed on or before January 14, 2008. (Doc. # 61) On January 14, 2008 Jeter filed a response to the Motion for Summary Judgment (Doc. # 62), and submitted her written declaration in support of her response. (Doc. # 62-2)

### II. ARGUMENT

For issues on which the plaintiff bears the burden of proof at trial (as in this case), the party moving for summary judgment is entitled to summary judgment if it shows that there is an absence

1

of evidence to support the non-movant's case. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir. 1993). Once a moving party meets its initial burden on summary judgment, the burden shifts to the non-movant to come forward with relevant and admissible evidence showing that there is a genuine issue of fact for trial. *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1438 (11th Cir. 1991). The non-movant must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct. 2548 (1986); *Kennedy v. Kelly Temporary Services, Inc.,* 95 F. Supp. 2d. 1288, 1294 (M.D. Ala. 2000). Additionally, to defeat summary judgment, the non-movant may not rely upon rumors, hunches, speculation, conclusory statements, or arguments that have no support in the record. *Kennedy,* 95 F. Supp. 2d at 1294.

The court is not required to submit a question to a jury merely because <u>some evidence</u> has been introduced by the party having the burden of proof, unless the evidence is such that it would warrant the jury entering a verdict in favor of that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S. Ct. 2505 (1986); *see also, Matsushita Ele. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). If the evidence presented by the nonmovant is <u>merely colorable</u>, and not significantly probative, summary judgment should be granted for the movant. *Anderson,* 477 U.S. at 249, 106 S. Ct. at 2510-11; *Raney v. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997).

Defendant Montgomery County made a proper showing on summary judgment that there are

no genuine issues of material fact, and that it is entitled to summary judgment with respect to all of Jeter's claims. The burden then shifted to Jeter to refute the evidence offered by Montgomery County. In her submission in opposition to the Motion for Summary Judgment, however, Jeter, for the most part, did not even address the evidence submitted by Montgomery County. Jeter merely realleged the same allegations in her pleadings, and stated in conclusory terms that she was denied overtime wages, and that Montgomery County retaliated and discriminated against her. Based on the record before this Court, no reasonable jury could find in favor of Jeter on her claims. Montgomery County is entitled to summary judgment in this case.

     **A.**     **Fair Labor Standards Act ("FLSA").**

In her Second Amended Complaint, Jeter claimed that she did not know she was entitled to receive overtime compensation for making home detention calls. (Doc. # 27, Second Am. Complaint, p. 2, ¶ 4) Montgomery County demonstrated to the Court that it has a written procedure for requesting overtime compensation, and that Jeter submitted numerous overtime requests related to home detention calls. (Doc. # 52, Howell Affidavit, ¶¶ 10-11, exs. A, B, & B1; Jeter depo., exs. 11-18; Jeter depo., p. 88, line 22 - p. 89, line 3; p. 204, line 22 - p. 205, line 10; Wooten Affidavit, ¶ 5) Montgomery County also showed that Jeter was paid or given leave each time she file a written overtime request. (Doc. #52, Howell Affidavit, ¶ 11, exs. B-B1; Jeter depo., exs. 11-18) When Jeter was presented with this evidence in her deposition, she claimed that she was only able to receive overtime for home detention calls when she was in the building working after hours on youth court on her regular work days, Monday - Thursday, or when she covered for employee Phoenix Martin on the weekends. (Doc. # 52, Jeter depo., p. 61, lines 13-14; p. 167, line 23 - p. 169, line 9) Montgomery County, however, produced payroll records showing that this was not correct, i.e., that

Jeter was in fact paid overtime (or given leave) for making home detention calls, even when she was not also performing youth court duties at the facility. (See Defendant's Memorandum Brief, Doc. # 50, pp. 10-15) In her deposition, Jeter could not explain this discrepancy. (Doc. # 52, Jeter depo., p. 179, line 4 - p. 181, line 21; Jeter depo., p. 172, lines 13-23)

In responding to Montgomery County's Motion for Summary Judgment, Jeter made no attempt to explain this discrepancy or otherwise refute the evidence submitted by Montgomery County. She merely restated her same contentions that she only got overtime for home detention calls when she covered for Phoenix Martin on weekends, or when she was working on youth court after hours and was physically in the facility. (Doc. # 62-2, p. 2) Jeter ignored the fact that Montgomery County had already demonstrated in its summary judgment submissions that these contentions are not factually correct, and are in fact contradicted by the payroll records and overtime certification sheets signed by Jeter.

Montgomery County has demonstrated that there is no evidence to support Jeter's FLSA claim. Jeter's testimony that she could not get overtime for making calls for home detention unless she was in the building working on youth court, is discredited in its entirety by the overtime certification forms signed by Jeter. Her story is so contrary to the documentary evidence in this case, no rational trier of fact could find that she is entitled to relief. Jeter acknowledged in her deposition that she could not explain the discrepancies between her testimony and the overtime certification forms she signed. On summary judgment Jeter again failed to explain the discrepancy or offer anything to refute the evidence offered b y Montgomery County. Montgomery County is therefore entitled to summary judgment on Jeter's FLSA claim. *See, e.g., Carmical v. Bell Helicopter Textron, Inc.,* 117 F.3d 490, 495 (11th Cir. 1997) (summary judgment appropriate where plaintiff

failed to rebut evidence submitted by defendant demonstrating that plaintiff could not prove essential elements of claim).

    **B.**    **Race Discrimination.**

In her Second Amended Complaint, Jeter asserts a § 1983 claim for racial discrimination in violation of the equal protection clause of the Fourteenth Amendment. Jeter claimed that she worked overtime making home detention calls and was not paid overtime compensation, and that a white employee performed the same duties and did receive overtime compensation. (Doc. # 27, Second Am. Complaint, p. 2, ¶ 4; p. 4, Count IV) Jeter made the same allegations in her deposition taken on September 4, 2007. (Doc. # 52, Jeter depo., p. 287, line 22 - p. 288, line 13)

In the Court's March 19, 2007 Memorandum Opinion addressing Montgomery County's previously-filed Motion to Dismiss, the Court characterized Jeter's claim as a constitutional claim based on wage differences between Jeter and another employee. (Doc. # 26, p. 25) According to the Court:

> Here, Jeter is not only claiming that she was denied overtime pay to which she is entitled under the FLSA, she is also claiming that she was treated differently, based on her race, from a similarly situated white employee. Even if Jeter does not prevail on her FLSA claim for denial of overtime pay, it is conceivable that she could still have an equal-protection claim for race-based pay inequality.

(Doc. # 26, p. 26)

In its summary judgment submissions, Montgomery County submitted undisputed evidence that Jeter and the alleged comparators, Ashurst and Martin, were not similarly situated, and that these alleged comparators were not treated differently than Jeter. (Doc. # 50, pp. 22-24) Jeter made no response concerning Ashurst but concentrated solely on Martin. (Doc. # 62-2, pp. 1-2) Jeter's equal protection claim, to the extent it was based Ashurst being a comparator, should therefore be

5

dismissed. *Kennedy,* 95 F. Supp. 2d at 1295.

With respect to co-employee Martin, Jeter did not refute any evidence offered by Montgomery County. Specifically, Montgomery County demonstrated that Jeter and Martin were not similarly situated because they worked different schedules, had different duties, and because Martin, (with the exception of two home detention calls over a four year period), made her home detention calls during her regular work hours and thus generally did not even need to request overtime compensation. (Doc. # 50, pp. 23-24) Jeter had different work hours, different job duties, and claims that she made all of her home detention calls <u>after hours</u>. These are the calls for which Jeter seeks payment in this case.

Montgomery County also showed that Martin and Jeter were not treated any differently for purposes of Jeter's race discrimination claim. (Id.) Montgomery County showed that when Martin covered the home detention calls for Jeter during the week, Martin was compensated, and the same was true in reverse; when Jeter covered for Martin on the weekends, Jeter was compensated for the home detention calls. (Id.) Montgomery County also pointed out that Jeter was claiming that she was not paid for making home detention calls after hours away from the facility, and that Martin only made one home detention call after hours during the four year period of 2002-2006, and one such call on a holiday; the rest of Martin's home detention calls were made during her regular work hours. (Id.) Montgomery County further showed that on each occasion Jeter requested overtime for making calls after hours in and out of the facility, she was compensated, and so was Martin. (Id.) Montgomery County also demonstrated that Jeter had a higher salary and hourly rate than Martin (Doc. # 52, Montoya Affidavit, ¶¶ 3-4), and that Jeter had more overtime requests and made more money in overtime than Martin. (Id.; Howell Affidavit, exs. B-C)   Montgomery County thus

presented sufficient evidence demonstrating that Jeter and Martin were not similarly situated and were not treated differently.

In response, Jeter did not address this evidence submitted by Montgomery County. Instead, Jeter now attempts to change her equal protection claim in midstream. Without pointing to any supporting reference in the record, Jeter now claims that Martin was not assigned after hours home detention duties like Jeter. (Doc. # 62-2, p. 1, ¶ 3) According to Jeter, "if she [Martin] was assigned home detention duties, she was assigned these duties during her regularly scheduled work day. Therefore, there was no need for her [Martin] to get compensated for any overtime for performing duties associated with home detention duties." (Id. at p. 2) Jeter sums up her argument by stating that Jeter and Martin were treated differently because Jeter was assigned home detention calls to be made after hours, and Martin was assigned home detention calls to be made during work hours. (Id.)

This argument is not the same argument Jeter started out with in her Second Amended Complaint. In her Second Amended Complaint, Jeter claimed that she worked overtime making home detention calls and did not get compensated, and that a white employee worked overtime making home detention calls and did receive overtime compensation. (Doc. #27, Second Am. Complaint, p. 2) The Court also characterized this claim as a constitutional claim based on wage differences. (Doc. #26, pp. 3-4) Now that summary judgment has been filed, however, Jeter's new argument is that she was treated differently than Martin in the assignment of home detention duties. (Doc. # 62-2, p. 1, ¶ 3) Jeter should not be allowed to assert a new equal protection claim at this point in the litigation. This Court's Scheduling Order also prohibits an amendment at this late date. (Doc. # 11 , Uniform Scheduling Order, § 4 )

In any event, this new argument does not support a claim for racial discrimination. Jeter's

new argument is not supported by any reference to evidence in the record, but is based solely on Jeter's subjective beliefs about the assignment of work duties to Martin. In fact, the sworn testimony of Martin and her supervisor, Wooten, is that home detention calls could be made by Martin during her regular work hours or after her regular work hours. (Doc. # 52, Martin Affidavit, ¶ 4; Wooten Affidavit, ¶ 5) Martin merely chose to make the majority of her home detention calls during her regular work hours. (Doc. # 52, Martin Affidavit, ¶ 4) Jeter's conclusory, unsupported statement that Martin was only assigned home detention calls to be made during her regular work hours is not supported by any evidence in the record, and is in fact contrary to the sworn testimony from Martin and Wooten.

Jeter has also offered no evidence so show that any actions of Montgomery County were motivated by an intent to discriminate based on race, an essential element of her equal protection claim. *Personnel Adm'r. v. Feeney,* 442 U.S. 256, 272, 99 S. Ct. 2282 (1979). Moreover, Montgomery County presented undisputed evidence that it had no policy or custom that was the "moving force" behind the alleged racial discrimination of which Jeter complained. Specifically, Montgomery County demonstrated that Howell and Wooten did not have final policymaking authority for Montgomery County on the subject of overtime compensation, and therefore Montgomery County could not be liable under § 1983 for racial discrimination based on the alleged acts of Howell and Wooten. *City of Canton v. Harris,* 489 U.S. 378, 385, 109 S. Ct. 1197 1203 (1989). Jeter did not even address the issue of local governmental liability in her response to the Motion for Summary Judgment. Because Montgomery County satisfied its initial burden on summary judgment as to this issue (local governmental liability), and Jeter filed to even address this issue, Jeter has failed to show the existence of a genuine issue as to a material fact. *Kennedy,* 95 F.

Supp. 2d at 1295. Jeter's § 1983 racial discrimination claim should therefore be dismissed.

### C. Retaliation Claim.

Montgomery County is also entitled to summary judgment on Jeter's FLSA retaliation claim. In its Motion for Summary Judgment, Montgomery County addressed every alleged retaliatory act presented by Jeter in her Second Amended Complaint and her deposition. Montgomery County demonstrated to this Court that these acts did not constitute retaliation because they were either not causally related to Jeter's complaint regarding overtime pay, or they were not adverse employment actions under *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 126 S. Ct. 2405 (2006). Montgomery County further presented evidence demonstrating that it had nondiscriminatory reasons for its actions. (Doc. # 50, pp. 27-33)

In response, Jeter only addressed one of the alleged retaliatory acts, i.e., the cancellation of the home detention program. Because Montgomery County made a proper showing on summary judgment that the other alleged retaliatory acts did not amount to retaliation, and Jeter failed to rebut this evidence, Jeter cannot rely on these other alleged acts of retaliation and summary judgment should be entered with respect to these claims. *Kennedy,* 95 F. Supp. 2d at 1295.

With respect to the cancellation of the home detention program, Jeter merely claimed that the reasons offered by Montgomery County were not the real reasons. (Doc. # 62-2, p. 2) Jeter further stated that the new presiding judge at the Montgomery County Juvenile Court, Patricia Warner, was surprised when she learned that the home detention program was canceled. (Doc. # 62-2, p. 3)

To survive Montgomery County's motion for summary judgment, Jeter was required to demonstrate that Montgomery County's reasons for canceling the home detention program were a

9

pretext for retaliation against her. To show pretext, Jeter was required to submit evidence sufficient "to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). Conclusory allegations, without more, are not sufficient to show pretext. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir. 1996). The plaintiff must meet the proffered reason "head on and rebut it." *Champan v. Al Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000).

Jeter failed to rebut the reasons offered by Montgomery County for cancellation of the home detention program. Her evidence consisted solely of conclusory statements that Montgomery County did not offer the real reason, and that the new presiding judge, Patricia Warner, was surprised that the program was canceled. This does not establish anything, much less that Montgomery County's reasons for cancellation of the program were pretextual. Montgomery County is therefore entitled to summary judgment on Jeter's retaliation claim.

### III. CONCLUSION

Based on the foregoing, Defendant Montgomery County respectfully requests that this Court enter summary judgment in its favor as to all counts in Jeter's Second Amended Complaint.

                                                        *s/Constance C. Walker*
                                                        Thomas T. Gallion, III (ASB-5295-L74T)
                                                        Constance C. Walker (ASB-5510-L66C)
                                                        Tyrone C. Means (ASB-760-S80T)
                                                        Ramadanah S. Jones (ASB-9751-M61S)
                                                        Counsel for Defendant Montgomery County

**OF COUNSEL**

**HASKELL SLAUGHTER YOUNG & GALLION**
Post Office Box 4660
Montgomery Alabama 36103-4660
Telephone: (334) 265-8573
Facsimile:  (334) 264-7945


**OF COUNSEL:**

**THOMAS MEANS GILLIS & SEAY, PC**
Post Office Drawer 5058
Montgomery, Alabama  36103-5058
(334) 270-1033
(334) 260-9396 Fax

**CERTIFICATE OF SERVICE**

     I hereby certify that on the 28th day of January, 2008, I caused a copy of the foregoing to be mailed to the Plaintiff Mary W. Jeter by placing a copy of the same in the United States mail, postage prepaid as follows:

Ms. Mary W. Jeter
6016 Bolingbrook Drive
Montgomery, Alabama 36117


                                             *s/Constance C. Walker*
                                             Of Counsel