**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **MARY JETER,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| v. | )CASE NO. 2:06-CV-1043-MHT |
| | ) |
| **MONTGOMERY COUNTY,** | ) |
| | ) |
|     **Defendant.** | ) |

### <u>REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE</u>

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for consideration and disposition or recommendation on all pretrial matters as may be appropriate. (Doc. #43, entered October 3, 2007). Pending before the Court is Defendant Montgomery County's *Motion for Summary Judgment* (Doc. # 49, entered November 21, 2007), and *Brief in Support* (Doc. # 50, entered November 22, 2007). Plaintiff filed her response to the *Motion* on January 14, 2008 (Doc. #62), and Defendant submitted a *Reply Brief* on January 28, 2008 (Doc. # 67). Having reviewed the parties' submissions and exhibits thereto, it is the Recommendation of the Magistrate Judge that the motion be granted.

### I. FACTUAL BACKGROUND

The parties in this case are Plaintiff Mary Jeter ("Jeter"), a Youth Counselor employed at the county youth facility operated by Defendant Montgomery County, Alabama ("the

County"), within the Middle District of Alabama. Jeter presented four distinct claims against the County in her *Second Amended Complaint* (Doc. # 27), all arising from her employment duties. Jeter's brief and concise statement of facts from her *Amended Complaint* follows.

> Plaintiff is an employee of Defendant Montgomery County Youth Facility, operated by Montgomery County, directed by Bruce Howell, Chief Probation Officer and Juvenile Court Administrator. On June 1, 2002, Plaintiff, designated a Youth Counselor II, was assigned to Home Detention Verification under a new program developed by then - Judge Richard Dorrough.
> The work required Plaintiff to call youths who had been placed under Home Detention for criminal violations. The calls, made seven days a week at random hours, were intended to verify that the youths were indeed at home in the evenings.
>
> Plaintiff's new duties at night were in addition to her full-time job at the facility. Plaintiff, who is black, was no compensate for her calling assignments performed five nights a week, Monday through Thursday. On the weekends, a white employee was assigned to make the calls as part of her 40-hour work week. Plaintiff only received overtime pay, 2 hours per night, when she took over duties for the white employee on the weekend. It was the MCYF's practice and policy to pay other intake personnel two hours of overtime pay for after-hours calls, whether the calls were received or not.
>
> Plaintiff performed these home detention verification calls for most of four years. Plaintiff was never told by supervisors that she was eligible for overtime or compensation for the time worked. A white female who was assigned the duties in Plaintiff's absence was paid overtime.
>
> Plaintiff raised a written claim with the MCYF and Howell on January 31, 2006, which was referred to the county attorney in March. In April, the program was suspended. After Plaintiff made her written claim to the Montgomery County attorney, she has been retaliated against and harassed by Howell, shunned, spied upon and given a steeply increased workload.
>
> Plaintiff has suffered serious mental, emotional and physical injury and distress, as a result of her treatment by Defendant.
>
> (Doc. #27, at 2-3.)

This Court's Opinion of March 19, 2007 dismissed count two of the *Amended Complaint*, which alleged a breach of Jeter's employment contract. The Opinion permitted Jeter's claims under counts one (Fair Labor Standards Act ("FLSA")), three (Retaliation prohibited by the FLSA), and four (racial discrimination) to proceed. (Doc. #26, at 28). The County deposed Jeter on September 4, 2007. Shortly thereafter, her counsel was permitted to withdraw from the case. (Doc. #42.) The County filed a *Motion for Summary Judgment*, with supporting affidavits, deposition transcript, and exhibits. (Doc. # # 51, 52.) Having reviewed the *Motion* and supporting documents, Jeter's response, and the County's reply, the Court now addresses Jeter's surviving claims.

## II. SUMMARY JUDGMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only disputes about those facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Slomcenski*

*v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir. 2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is 'such that a reasonable jury could return a verdict for the nonmoving party.'").

Thus, the initial burden of proof in a motion for summary judgment rests on the movant. *Celotex*, 477 U.S. at 325; *Gonzalez*, 161 F.3d at 1294. This burden is satisfied when the movant shows that if the evidentiary record were reduced to admissible evidence at trial, it would be insufficient to permit the non-movant from carrying its burden of proof. *Celotex*, 477 U.S. at 322-23. The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial. *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)). Once the movant meets its burden under Rule 56, the non-movant must designate specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likewise insufficient to defeat a proper motion for summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the

mere allegations or denials of the pleadings. FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *Johnson*, 263 F.3d at 1242-43; *Smith v. F.D.I.C.*, 61 F.3d 1552, 1562 n. 18 (11th Cir. 1995) (on summary judgment, the court resolves all reasonable doubts about the facts in favor of the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment <u>must</u> be granted. *Celotex*, 477 U.S. at 322-23.

### III. DISCUSSION

*Count One*

The Fair Labor Standards Act guarantees employees overtime compensation in the amount of one and one-half times their regular pay for hours worked in excess of forty hours. 29 U.S.C. §207. The County does not dispute Jeter, employed as a Montgomery County Youth Counselor since 1974, is covered by the provisions of the FLSA. Jeter's *Second Amended Complaint* avers she was not compensated for home detention calls performed outside of her 40-hour workweek, and she was never told by supervisors she was eligible for overtime or compensation. Jeter repeats the allegations in her Declaration, wherein she states "I was never informed that [in order to] get paid for working overtime I had to make any request for compensation for overtime." Doc. #62-2, at 1. She further states [T]he only time I was compensated for perform[ing] home detention duties was (1) if I covered for [white

female coworker] on the weekend . . .; or (2) when I worked Youth Court . . . ." As noted by the Court's earlier *Opinion* addressing the County's motion to dismiss, "the facts alleged by Jeter, if true, support a claim that the County violated the FLSA." (Doc. #26, at 15.)

Documentary evidence submitted in support of the County's *Motion for Summary Judgment* demonstrates Jeter's allegations are not true. A chart summarizing Jeter's overtime payments from July, 2002 through January, 2006 show she received overtime pay not only for youth court duties, but also for home detention calls on weekdays and weekends. (Doc. #52-3, at 25-28.). Exhibits attached to the affidavit show, in Jeter's own handwriting, dated requests for overtime attributable to both tasks. (Doc. #52-3, at 36-70; #52-4, at 1-85; #52-5, at 1-64.) The Court's review of the overtime requests, and comparisons to the applicable calendar years, demonstrate that (1) Jeter was aware of her ability to receive overtime; (2) she fully utilized the overtime payment process; and (3) she sought and received overtime compensation for home detention calls during the week, and not just when covering a coworker's weekend duties. Further, the approval forms submitted by Jeter were submitted and approved contemporaneously with her work, in contrast to her claim of receiving overtime only after the initiation of this lawsuit. *See* Doc. #62-2, at 2.

The Court finds the County did not violate section 207 of the FLSA, and is therefore entitled to summary judgment on Jeter's claim that she was unaware of her right to overtime pay for work duties performed outside of her regular work week.

### *Count Three*

The Fair Labor Standards Act protects employees who have "filed any complaint or

instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. §215(a)(3). Anti-retaliation provisions such as this one protect "an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington Northern and Santa Fe Railway Co. V. White*, 548 U.S. 53, 126 S.Ct. 2405, 2414 (2006); *see* Doc. #26, at 20-21, noting applicability of *Burlington*'s ruling under Title VII of the Civil Rights Act of 1965 to FLSA actions. The retaliatory action must be "materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington, id*. at 2415. Successful retaliation claims require proof that the plaintiff (1) engaged in a protected activity; (2) suffered an adverse employment decision; and, (3) there was a causal link between the plaintiff's activity and the adverse employment decision. *EEOC v. Luce, Forward, Hamilton & Scripps*, 303 F.3d 994, 1005 (9th Cir. 2002).

Even though the Court finds no merit to Jeter's contention that she was unaware of her right to overtime pay, thus defeating her claim under section 207, retaliatory action by the County could still give rise to liability under section 213. *See EEOC v. White and Son Enterprises*, 881 F.2d 1006, 1011 (11th Cir. 1989) (unofficial complaints to employer constituted an assertion of rights under FLSA, and were sufficient to trigger statute's anti-retaliation provision). A letter from Jeter's former counsel gave the County formal notice of Jeter's claim for overtime pay on January 31, 2006. Doc. # 57-7, at 1-2. Any adverse employment action after this date could result in liability under the statute. Jeter cites termination of the home detention program, a severely increased workload, negative

comments from superiors regarding her claim, and being shunned.

Jeter does not explain, and the Court does not see, how termination of the home detention call program in early 2006 constituted an adverse employment action. Bruce Howell's Declaration submits the program was terminated due to ineffectiveness and the decision to use electronic monitoring for the detention program. Jeter's disagreement with the County's facially valid reason for ending the program does not advance her claim of retaliation. *See* Doc. #52-2, at 8-9; Doc. #62-2, at 2-3. While records show Jeter benefitted from overtime pay arising from the program's administration, the termination did not negatively impact her base salary, title, or other benefits. Similarly, Jeter's claim of illegal retaliation by means of a severely increased workload has no support in the record, as she has not presented any evidence of duties which cannot be performed during her normal work week. Finally, Jeter's claims of negative comments, shunning, and criticism are unsupported beyond the broad statements included in her *Amended Complaint*. In *Burlington*, the Supreme Court explained how context impacts determinations regarding workplace retaliation, reiterating that "an 'act that would be immaterial in some situations is material in others.'" *Burlington*, *id*. at 2415-16, quoting *Washington v. Illinois Dept. Of Revenue,* 420 F.3d 658, 661 (7th Cir. 2005).

Jeter gave neither facts nor context for the Court's evaluation of her retaliation claim. *See Celotex*, 477 U.S. at 322-23. To withstand a motion for summary judgment Jeter must "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). She cannot rest on her pleadings and survive the County's motion "based on hunches unsupported

with significant probative evidence," and cannot "interpose genuine issues of material fact with 'a mere inference based on speculation and conjecture.'" *Kennedy v. Kelly Temporary Services, Inc.*, 95 F.Supp.2d 1288, 1294 (M.D. Ala. 2000) (citations omitted).  The Court finds the County did not violate section 215(1)(3) of the FLSA, and is therefore entitled to summary judgment on Jeter's claim of retaliatory conduct.

### *Count Four*

Jeter's final surviving claim alleges disparate treatment in violation of the Fourteenth Amendment to the United States Constitution.  Jeter claims she, a black woman, was denied overtime compensation received by white employees.  In finding this claim survived the County's motion to dismiss, the Court phrased the claim as one asserting Jeter "was denied overtime pay to which she is entitled under the FLSA" and was thus "treated differently, based on her race, from a similarly situated white employee."  Doc. #26, at 26.  The Court was careful to highlight the viability of a race-based pay inequality claim even if Jeter did not establish her FLSA claim for denial of overtime pay.

As discussed above, Jeter's count one claim under FLSA fails because the County submitted records showing she received overtime pay for home detention calls on several occasions, including weeknights and weekends.  Thus, her receipt of overtime pay voids her claim of racially-disparate treatment regarding allegations she was denied the same.  As for the constitutional claim alleging race-based pay inequality, Jeter acknowledged she must present evidence showing "she was treated differently than other similarly situated employees and this different treatment was a result of intentional discrimination" by the

County.  Doc. #62, at 7.  Jeter does not present any other evidence of pay disparity between herself and white employees, and the Court concludes the County is entitled to summary judgment on this point.  *Kennedy*, *id*.

Jeter's Declaration suggests the different schedules assigned to her and her white co-worker demonstrate racially-disparate treatment by the County.  Doc. #62-2, at 1-2.  The discussion of different work schedules does not advance Jeter's cause, as the schedule described, if accurate, would have simply resulted in more overtime pay for Jeter's duties related to youth court and detention calls, which does not necessarily violate the Constitution. Numerous exhibits submitted by the County show Jeter was compensated upon request for these duties, in contravention of the claims made in her *Amended Complaint* and Declaration.

The Court finds the County did not violate Jeter's right to equal pay for equal work, and is therefore entitled to summary judgment on Jeter's constitutional claim

## CONCLUSION

For the foregoing reasons, it is the RECOMMENDATION of the Magistrate Judge (1) that Defendant's *Motion for Summary Judgment* (Doc. #49) be **GRANTED;** and, (2) that *Defendant's Motion to Strike Certain Portions of Plaintiff's Declaration* (Doc. #64) be **DENIED as Moot**.

*It is further ORDERED that the parties shall file any objections to the said Recommendation by February 18, 2008.*  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised

that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 4th day of February, 2008.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE